THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL HEIT, | CASE NO. C15-1805-JCC |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| AEROTEK INC, | |
| Defendant. | |

This matter comes before the Court on Defendant Aerotek's motion for summary judgment (Dkt. No. 25). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.      BACKGROUND

This case arises out of Plaintiff Heit's allegation that Defendant Aerotek unlawfully failed to accommodate his "shy bladder syndrome" disability by not permitting him to take a pre-employment drug test by a method other than urinalysis. (Dkt. No. 1 at 3–4.) Aerotek is a staffing company with an agreement with Genie, a manufacturer of heavy equipment, to provide temporary personnel. (Dkt. No. 27 at 2.) Under the staffing agreement with Genie, Aerotek is to ensure that all temporary personnel pass a ten panel drug test post-offer, pre-employment. (*Id.*) Aerotek retains eScreen to administer its clients' drug testing programs. (*Id.*)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 1

1    Aerotek conditionally offered Mr. Heit a position as a welder with Genie, subject to

2  passing the drug test. (Dkt. No. 1 at 3.) Mr. Heit twice went to a US Healthworks clinic, on

3  December 6, 2013 and January 2, 2014, to take a urinalysis. (Dkt. No. 28-1 at 18, 20.) Mr. Heit

4  alleged that both times he was unable to provide a urine sample. (*Id.*) The clinic reported back to

5  Aerotek's drug test team, informing it of Mr. Heit's inability to provide a urine sample due to

6  "social anxiety." (Dkt. No. 27 at 3.) The drug test team instructed the Aerotek field office to

7  request documentation from his primary care provider to confirm the alleged medical condition.

8  (*Id.*) Mr. Heit requested either a blood or hair follicle test. (Dkt. No. 28-1 at 21.) Mr. Heit

9  understood that if he provided the appropriate documentation of his condition, Aerotek would

10  allow an alternative type of drug test. (*Id.* at 19–20.)

11    Mr. Heit returned to the same clinic and met with Dr. Corina Nistor for fifteen to twenty

12  minutes. (Dkt. No. 28-1 at 20; Dkt. No. 28-2 at 7.) Dr. Nistor is not a urologist, psychiatrist, or

13  psychologist. (Dkt. No. 28-2 at 5.) Dr. Nistor testified at her deposition that (1) "shy bladder

14  syndrome" is diagnosed by first excluding physical problems, leaving a potential psychological

15  problem, (2) she did not perform a physical examination of Mr. Heit, or a "shy bladder

16  examination," and thus could not know whether he suffered from "shy bladder syndrome," (3)

17  she did not know whether Mr. Heit had "shy bladder syndrome" or not, and (4) she did not know

18  the medical term for "shy bladder syndrome" and she did not think there was one.[1] (*Id.* at 5–8).

19  Nonetheless, Dr. Nistor provided Mr. Heit with a note that stated "[Plaintiff] suffers from a form

20  of anxiety that cause [sic] him to be unable to urinate in public restrooms, or on demand. This

21  may affect his ability to provide a urine sample in a drug testing." (Dkt. No. 28-4.) Dr. Nistor

22  clarified in her deposition that the note she provided to Mr. Heit did not reflect her conclusion

23  about whether he had "shy bladder syndrome," but rather recounted what Mr. Heit told her. (*Id.*

24  at 8.)

25

26

   [1] The medical term for "shy bladder syndrome" is paruresis. (Dkt. No. 28-5 at 3.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 2

1    Mr. Heit provided Aerotek with Dr. Nistor's note, which Aerotek then sent to eScreen for

2  review by the Medical Review Officer (MRO). (Dkt. No. 27 at 4.) The MRO, Dr. Kracht,

3  responded that he "would not accept the letter unless the physician reviewed records from the

4  donor's physician documenting psychological condition, or personally spoke with the donor's

5  physician verifying the condition." (Dkt. No. 28-2.) According to Dr. Kracht, "[i]f the physician

6  did not do either, then the physician is just relaying what the donor stated." (*Id.*)

7    Aerotek informed Mr. Heit that Dr. Nistor's note was insufficient and he would need to

8  provide one from a primary care physician. (Dkt. No. 27 at 4.) Three days later a representative

9  from Aerotek again contacted Mr. Heit to let him know that if he provided a note from a primary

10  care physician, Aerotek would continue to engage in an interactive accommodation process. (*Id.*)

11  Mr. Heit hung up the phone. (*Id.*) This lawsuit followed.

12    Mr. Heit alleges that Aerotek discriminated against him on the basis of his alleged

13  disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et*

14  *seq.*, and the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code chapter

15  49.60. (Dkt. No. 1 at 3–5.) Specifically, Mr. Heit alleges that Aerotek failed to accommodate his

16  alleged "shy bladder syndrome" by not permitting an alternative method of drug testing. (*Id.* at

17  4.) Aerotek filed a motion for summary judgment, arguing that Mr. Heit's claims fail as a matter

18  of law because (1) Mr. Heit has not met the threshold requirement of establishing he has a

19  disability for purposes of the ADA and WLAD, and (2) Aerotek had no obligation to

20  accommodate Mr. Heit's alleged disability because he failed to provide "sufficient

21  documentation" from an "appropriate professional." (Dkt. No. 25 at 23–24.)

22  **II.    DISCUSSION**

23    **A.    Summary Judgment Standard**

24    The Court shall grant summary judgment if the moving party "shows that there is no

25  genuine dispute as to any material fact and that the [moving party] is entitled to judgment as a

26  matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court views the facts

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 3

1  and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving

2  party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary

3  judgment is properly made and supported, the opposing party "must come forward with 'specific

4  facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

5  *Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  Material facts are those that

6  may affect the outcome of the case, and a dispute about a material fact is genuine if there is

7  sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*,

8  477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and

9  "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89

10 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a

11 showing sufficient to establish the existence of an element essential to that party's case, and on

12 which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

13 324 (1986).

14        **B.**     **Analysis**

15        "To establish a claim [for failure to accommodate under the ADA], the plaintiff must

16 show (1) that he is disabled within the meaning of the ADA, (2) that he is qualified to perform

17 the essential functions of the job, with our without reasonable accommodation, and (3) that he

18 has suffered adverse employment action because of his disability." *Staub v. Boeing Co.*, 919 F.

19 Supp. 366, 369 (W.D. Wash. 1996) (citing 42 U.S.C. § 12112; *Benson v. Northwest Airlines,*

20 *Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995)). Under the WLAD, a plaintiff must show that

21

22
           (1) the employee had a sensory, mental, or physical abnormality
that substantially limited his or her ability to perform the job; (2)

23
the employee was qualified to perform the essential functions of
the job in question; (3) the employee gave the employer notice of

24
the abnormality  and its accompanying substantial limitations; and
(4) upon notice, the employer failed to affirmatively adopt

25
measures that were available to the employer and medically
necessary to accommodate the abnormality.

26

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 4

1   *Riehl v. Foodmaker, Inc.*, 94 P.3d 930, 934 (Wash. 2004). Aerotek argues that Mr. Heit has

2   failed to present evidence establishing that he has a disability[2] under either law, and that he

3   failed to provide the appropriate notice of his alleged disability.

4   1.   Mr. Heit's Alleged Disability under the ADA and WLAD

5   "The [ADA] defines 'disability' as: (1) 'a physical or mental impairment that

6   substantially limits one or more of the major life activities of such individual'; (2) 'a record of

7   such impairment'; or (3) 'being regarded as having such an impairment.'" *Kaplan v. City of N.*

8   *Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003) (quoting 42 U.S.C. § 12102(2)). The WLAD

9   defines a disability as "the presence of a sensory, mental, or physical impairment that: (i) Is

10  medically cognizable or diagnosable; or (ii) Exists as a record or history; or (iii) Is perceived to

11  exist whether or not it exists in fact." Wash. Rev. Code § 49.60.040(7)(a). Aerotek argues that

12  under any of either statute's three definitions of a disability, Mr. Heit has not shown that he in

13  fact has "shy bladder syndrome." (Dkt. No. 25 at 15.) This Court agrees.

14  A plaintiff cannot self-diagnose her own disability. *Hooker v. Adams*, 2008 WL 2788404,

15  *8–9 (E.D. Cal. July 18, 2008) ("Plaintiff may not defeat defendants' motion by simply

16  tendering his own opinion and the opinions of lay persons that he is dyslexic and has difficulty

17  reading and spelling."), report and recommendation adopted by 2008 WL 3992733 (E.D. Cal.

18  Aug. 25, 2008), aff'd by 370 Fed. App'x. 776 (9th Cir. 2010); *Felkins v. City of Lakewood*, 774

19  F.3d 647, 651–52 (10th Cir. 2014) (holding plaintiff's self-diagnosis inadmissible on summary

20  judgment to the extent it diagnosed plaintiff's condition because such a diagnosis required an

21  expert witness). Here, Mr. Heit has not come forward with any expert testimony to support the

22  existence of "shy bladder syndrome." Instead, he argues that his two failed attempts to produce a

23  _____

24  [2] Mr. Heit spends a significant portion of his response arguing that "shy bladder
    syndrome" is a disability. (Dkt. No. 29 at 6–9.) However, for purposes of its summary judgment
25  motion, Aerotek conceded that paruresis constitutes a disability for purposes of the ADA and
    WLAD. (Dkt. No. 25 at 16.) Aerotek does not dispute that paruresis is a disability, rather it
26  maintains that Mr. Heit failed to provide evidence that he has paruresis.

1 urine sample and the twenty minute appointment with Dr. Nistor constitute an adequate basis for

2 Dr. Nistor's diagnosis.[3] (Dkt. No. 29 at 9.) However, Dr. Nistor is not a urologist, psychiatrist, or

3 psychologist. She did not rule out physical symptoms and then arrive at a psychological disorder.

4 She did not perform an examination. She did not know the medical term for paruresis and has

5 never diagnosed anyone with paruresis. And she testified at her deposition that she did not

6 diagnose him with "shy bladder syndrome" but rather recounted what he told her. This Court will

7 not recognize Dr. Nistor as an expert on "shy bladder syndrome," and her note is insufficient to

8 create a genuine issue of material fact.

9        Mr. Heit also failed to produce any evidence of a record or history of his disability.

10 Finally, the record does not support a finding that Aerotek regarded or perceived Mr. Heit as

11 having paruresis. Quite the opposite, in fact, as it requested further documentation from Mr. Heit

12 in order to establish his alleged disability. Without more, Mr. Heit's claim that he has "shy

13 bladder syndrome" amounts to self-diagnosis, and is insufficient as a matter of law for his claim

14 to go forward under the ADA or WLAD.

15            2.   Aerotek's Duty to Accommodate Mr. Heit's Alleged Disability

16        In a failure to accommodate case, "[t]he employer is entitled to know that an employee

17 has a covered disability that requires a reasonable accommodation." Equal Employment

18 Opportunity Commission ("EEOC"), Enforcement Guidance: Disability-Related Inquiries and

19 Medical Examinations of Employees Under the ADA, 2000 WL 333407181, at *9 (July 27,

20 2000). An employer may ask an employee for "reasonable documentation about his/her disability

21 and its functional limitations that may require reasonable accommodation." *Id.* The employer

22

23

24    [3] Mr. Heit also argues that proof of whether a person has a disability should not entail
   "extensive analysis" to support his argument that the evidence he has presented is sufficient.
   (Dkt. No. 29 at 9 (quoting CFR Part 1630.1(c)(4)).) Notwithstanding the fact that Mr. Heit

25 misapplies the language in the CFR, as it was intended to broaden what qualifies as a disability,
   requiring a examination and diagnosis by a qualified physician does not rise to the level of

26 impermissible "extensive analysis."

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 6

1    may require that this documentation come from an "appropriate health care or rehabilitation

2    professional." EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship

3    under the Americans with Disabilities Act, 2002 WL 31994335, at *6 (Oct. 17, 2002). "The

4    appropriate professional in any particular situation will depend upon the disability and the type

5    of functional limitation it imposes." *Id.* Documentation from a health care professional who does

6    not have the expertise to diagnose an employee's medical condition is insufficient. EEOC,

7    Enforcement Guidance, 2000 WL 333407181, at *11. "If an employee provides insufficient

8    documentation, an employer does not have to provide reasonable accommodation until sufficient

9    documentation is provided." *Id.*

10    Aerotek argues that even if this Court considers Dr. Nistor's note as sufficient to create a

11    genuine issue of material fact surrounding whether he has paruresis, Aerotek was under no

12    obligation to accommodate alternative testing methods because Mr. Heit did not provide the

13    requested documentation. Mr. Heit counters that the requested documentation "did not exist and

14    could not be generated because Plaintiff did not have a primary care physician" and that Dr.

15    Nistor's note was sufficient to provide notice. (Dkt. No. 29 at 10.) However, Aerotek was

16    entitled to ask for documentation from a doctor who had the requisite expertise to diagnose

17    paruresis or, at the very least, performed a physical examination. Mr. Heit provided neither. And

18    while the Court is sympathetic to the fact that Mr. Heit did not have a primary care physician and

19    that he may have incurred costs to acquire an acceptable examination and diagnosis, that does

20    not mean the requested documentation did not exist and could not be generated. Because this

21    Court finds that Mr. Heit did not provide the proper documentation to Aerotek, no duty to

22    accommodate arose.

23    **III.   CONCLUSION**

24    For the foregoing reasons, Defendant Aerotek's motion for summary judgment (Dkt. No.

25    25) is GRANTED. Plaintiff Heit's claims are DISMISSED with prejudice.

26    //

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 7

1     DATED this 27th day of October 2016.

2

3

4

5

6    _____

7    John C. Coughenour
     UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 8